**Bill GRAVES, Frank Keating, Ernest Istook, Frank Lucas, Tom Coburn, J.C. Watts, Mary Fallin, Mike Hunter, Brenda Reneau, Grover Campbell, Gerald Wright, Tom Akers, Robert Arthur, Max Shane Boothe, Steve Byas, John Chase, Eddie Hagler, Steve Hammontree, Pat Hayes, Ed Jantzen, Charles Key, Mark Liotta, Brian McKye, Tere Morrison, Rick Nagel, Wayne Pettigrew, Dan Ramsey, Jim Reese, Edna Reeves, Lyle Roggow, and John Sullivan, Plaintiffs,**

v.

**Betty McELDERRY, Chairman of the Oklahoma State Election Board, Mona Lambird, Vice Chairman of the Oklahoma State Election Board, George Krumme, Member of the Oklahoma State Election Board, and Lance Ward, Secretary of the Oklahoma State Election Board, Defendants.**

No. CIV–94–1420–R.

United States District Court, W.D. Oklahoma.

July 3, 1996.

Tim W. Green, Oklahoma City, OK, for plaintiffs.

Gretchen G. Harris, Victor N. Bird, Office of the Attorney General, Oklahoma City, OK, Andrew J. Tevington, Office of the Attorney General, Litigation Division, Oklahoma City, OK, for defendants.

## MEMORANDUM OPINION AND ORDER

DAVID L. RUSSELL, Chief Judge.

This case presents a dispute over the constitutionality of a provision of the Oklahoma Election Code, 26 Okla.Stat. §§ 1–101 to 21–102 (the "Election Code"), which provides that in all Oklahoma General Elections, the election ballots are printed so that for each public office designated on the ballot form, the Democratic party candidate always appears in the top position—above any Republican party candidates, and above any Inde-

pendent candidates. 26 Okla.Stat. § 6–106. This Court assumes jurisdiction over this dispute in accordance with 28 U.S.C. §§ 1331 and 1343(a)(4), and holds section 6–106 of the Election Code to be, in part, unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, cl. 3. Because the Court determines it has no jurisdiction over Plaintiffs' claim under Article III, § 5 of the Oklahoma Constitution, the Court dismisses Plaintiffs' state law claim. Fed.R.Civ. 12(b)(1).

## I. STATEMENT OF THE CASE

### A. Introduction.

This is a civil rights action under 42 U.S.C. § 1983. On the date their First Amended Complaint was filed, October 13, 1994, Plaintiffs were candidates for public office in the 1994 Oklahoma General Election. Defendants were officers and members of the Oklahoma State Election Board.[1]

Plaintiff's Complaint contends that section 6–106 of the Election Code violates the Equal Protection Clause of the Fourteenth Amendment, and Article III, section 5 of the Constitution of the State of Oklahoma, by mandating that the top position in each office block on every general election ballot be occupied by the candidate representing the Democratic party. Plaintiffs contend this election ballot configuration gives the Democratic party candidate an unfair advantage in each General Election, and thus impermissibly burdens Oklahoma citizens' right to vote. Plaintiffs' First Amended Complaint asks the Court to certify a class pursuant to Fed.R.Civ.P. 23(b)(2),[2] and to grant Plaintiffs and other similarly situated Republican party candidates declaratory and permanent injunctive relief. With respect to their request for

injunctive relief, Plaintiffs specifically ask the Court to order Defendants to adopt and implement a "rotating" ballot system: i.e., a system in which the name of each candidate for public office appears in the top position on the election ballots an equal number of times as every other candidate's name.[3]

Plaintiff's case originally came before this Court on cross-motions for summary judgment filed by the parties pursuant to Fed. R.Civ.P. 56. On May 8, 1996, upon order of this Court, a hearing was held on the cross-motions. At that hearing, the parties agreed the only material factual issues in genuine dispute in the case were: (1) whether the top position in an office block on a General Election ballot actually affords any advantage to the candidate for public office occupying the position; and (2) whether a ballot layout which places one party's candidate in the top position on the ballot in every General Election is capable of burdening the legal rights of other party candidates and voters.

At the May 8, 1996 hearing, the parties agreed all the testimony and evidence available to them on these two (2) issues was either attached to their motions, or available at the hearing. The parties therefore stipulated that the Court should proceed to conduct a bench trial, and issue a final determination on the legal question presented in the case, rather than ruling on the cross-motions for summary judgment.[4] For this reason, the Court determines this case in this Memorandum Opinion and Order, and gives judgment on the legal and factual issues presented by the parties. The parties' cross-motions for summary judgment are consequently rendered moot, and shall therefore be denied.

Based upon the evidence attached to the

---

1. Defendants are sued in their official capacities only in this case. In such capacities, Defendants are charged by Oklahoma law with the responsibility of enforcing the statutory provision at issue in this case. 26 Okla.Stat. § 2–106. The Secretary of the State Election Board, Defendant Lance Ward, is charged by law with the oversight of the election process in the State, and the enforcement of State and federal election laws. 26 Okla.Stat. § 2–107.

2. Plaintiffs voluntarily dismissed their class action claim prior to trial in this matter.

3. Plaintiffs note that such a "rotating" ballot system is already utilized by the State in primary elections. See 26 Okla.Stat. § 6–109.

4. See Transcript of Proceedings Before the Honorable David L. Russell, United States District Judge, Case No. CIV–94–1420, May 8, 1996 [hereinafter "Transcript"] at pp. 18, 32.

parties' motions,[5] and presented at the hearing on May 8, 1996, the Court finds the facts of this case to be as follows.

### B. *Facts of the Case.*

In 1991, a Democratically-controlled Oklahoma Legislature enacted the statutory language which, when codified, became the current version of section 6–106 of Oklahoma's Election Code.[6] The statutory provision was signed into law by Oklahoma's Governor David Walters, a member of the Democratic party.[7] It is this version of section 6–106 of the Election Code which mandated the ballot configuration used in the 1994 Oklahoma General Election, and which Plaintiffs now contend is unconstitutional. Section 6–106 reads as follows:

> The official ballot card for the General Election shall be printed so that the nominees of the various political parties and nonpartisan candidates will appear in columns. For each ballot for which there are partisan candidates, the candidates of the Democratic party shall be printed in the first position, those of the Republican party in the second position and those of other parties as the State Election Board may direct, giving preference to the party which had the largest number of registered voters in the latest January 15 report, followed by candidates who filed as Independents.... The name of the office entitled to the first place in the column, preceded by the word "for," shall next appear in bold type, as "For Governor." Immediately after same shall be the names of the nominees for such office printed with the name of the nominee's party followed by candidates who file as Independents for such office printed with the word "Independent." The list shall be continued

down each column, naming the officers in the order in which they are set out by the Constitution and statutes, until all the nominees are given space....

26 Okla.Stat. § 6–106. This statutory language provides that in all Oklahoma General Elections a uniform "office block" or "Massachusetts style" election ballot format shall be utilized.[8, 9] The salient features of such a ballot are that the ballot form is printed with columns of "blocks" delineating each public office, and names of candidates are listed vertically within each block, along with their party name and symbol.[10] *See* Copy of General Election Ballot attached as Exhibit "A." The Democratic party candidate always appears on the top of the vertical list of candidates in each office block on the ballot form. 26 Okla.Stat. § 6–106.

Earlier versions of section 6–106 of the Election Code dictated a "party-column" style election ballot for Oklahoma's General Elections. *See* 1974 Okla.Sess.Laws ch. 153, § 6–106; 1976 Okla.Sess.Laws ch. 90, § 4. This style of ballot typically listed all the candidates of a particular party in columns, with the public offices for which the candidates were running identified by horizontal blocks.[11] *See* Copy of Sample Ballot attached hereto as Exhibit "B." On Oklahoma's party-column ballots, all Democratic party candidates were listed in a column appearing on the left side of the ballot, the Republican party candidates were listed in a middle column, and all Independent candidates appeared on the right side of the ballot. 1974 Okla.Sess.Laws ch. 153, § 6–106; 1976 Okla.Sess.Laws ch. 90, § 4.

The Secretary of the State Election Board, Defendant Lance Ward, testified at the May 8, 1996 hearing before this Court that the

---

5. Transcript at p. 18, 32–34. *See also*, Plaintiffs' Motion for Summary Judgment at pp. 1–7; Defendants' Motion for Summary Judgment at pp. 4–11.

6. Plaintiffs' Motion for Summary Judgment, p. 4 ¶ 20; Transcript at pp. 210–12.

7. Plaintiffs' Motion for Summary Judgment, p. 4 ¶ 21.

8. Plaintiffs' Motion for Summary Judgment, p. 2. ¶ 8; Transcript at pp. 35–38.

9. The election ballot described by section 6–106 of the Election Code is modified somewhat from the commonly used "office block" ballot used in other states, in that it is configured to permit straight party voting. Transcript at p. 149. This modification does not affect the Court's determination of the factual or legal issues in this case.

10. *Id.*

11. *Id. See also*, Transcript at p. 39.

uniform office block style of election ballot was implemented by the Oklahoma Legislature to accommodate the new computerized voting devices the State began using in 1992.[12] Ward also testified that when the Democratically-controlled Oklahoma Legislature enacted the most recent version of section 6–106, and assured that the Democratic party candidate would always appear at the top of any list of candidates for public office on General Election ballot forms, the Legislature was undoubtedly motivated by a desire to permit Democratic party candidates to capitalize on any election advantage which could be gained by receiving top billing on the ballot.[13] Ward testified that the legislative decision to include a provision in section 6–106 which would assure a top position on the ballot for Democratic party candidates was a "political decision." [14]

However, according to Ward, the legislative decision to utilize a uniform ballot system in every General Election, rather than some rotating ballot system which would effectively "mix-up" the list of candidates on each ballot, was motivated by cost considerations, and a desire to minimize the possibility of voter confusion.[15] It is unrefuted in the Court record that the implementation of any kind of rotating ballot system in Oklahoma General Elections, similar to that system mandated for primary elections by 26 Okla. Stat. § 6–109, would result in a ballot format that is potentially confusing to voters, and would be both costly and burdensome for the State to implement and administer.[16] Moreover, the adoption of a random ballot system

would make the counting of straight party votes difficult for the State.

All Plaintiffs here ran for public office in the 1994 General Election. It is undisputed that several Plaintiffs lost their political races to Democratic party candidates in that General Election by a small percentage of votes.[17] Thus, it cannot be, and indeed is not disputed that if the particular ballot configuration compelled by section 6–106 of Oklahoma's Election Code afforded Democratic party candidates for public office an advantage in the 1994 General Election, the outcome of that Election could very well have been different for some of the Plaintiffs.

The vast majority of the Plaintiffs in the instant case have filed affidavits with this Court testifying that they intend to run again for public office in the next available General Election.[18] Therefore, assuming there is a position advantage which accrues to Democratic party candidates as a result of the ballot design set by section 6–106, Plaintiffs argue they are likely to be adversely affected by the design in the future.

The phenomenon of position advantage which may arise from a ballot configuration in which a candidate's name on the ballot form is positioned above other candidates in a vertical column is called "position bias." [19] Plaintiff's political science expert, Delbert E. Taebel, Ph.D. ("Dr. Taebel"), testified at the May 8, 1996 hearing that, in theory, the existence of position bias arising from such an election ballot design causes a certain

---

**12.** Deposition of Lance Ward, September 19, 1995, attached as Exhibit "4," to Plaintiff's Motion for Summary Judgment, at pp. 40–41.

**13.** Transcript at p. 211.

**14.** *Id.* The description of the Oklahoma Legislature's decision in this regard as a "political decision" is taken directly from Ward's testimony. In that testimony Ward also noted in both the older party-column ballots and the new office block ballots, Democratic party candidates were listed in the first position on the ballot as a matter of Oklahoma law. *Id.* The Court notes, however, that in Oklahoma's party-column ballots, the first position dictated by law was a left-hand column position, rather than a "top" position as results when the office block ballot configuration now prescribed by section 6–106 of the Election Code is utilized. There is no evi-

dence in the Court record which suggests that position bias occurs as a result of the placement of any candidate's name on a ballot where the party-column style of ballot is used.

**15.** Transcript at pp. 196–97, 201.

**16.** *Id.*

**17.** Plaintiff's Motion for Summary Judgment, p. 5, ¶ 24; Transcript at pp. 194–95.

**18.** *See* Affidavits on file in this case.

**19.** Plaintiff's Motion for Summary Judgment, p. 5, ¶ 26; Affidavit of Delbert E. Taebel, Exhibit "3" to Plaintiff's Motion, at ¶ 5; Transcript at p. 24.

amount of "windfall vote" to accrue to that candidate whose name appears on the ballot form in the favored, or higher position.[20] It is the potential of such a "windfall vote" to benefit Democratic party candidates in Oklahoma's General Elections that is the foundation for Plaintiffs' claim that the ballot layout mandated by section 6–106 of Oklahoma's Election Code is unconstitutional. Accordingly, the existence of position bias arising from the particular ballot configuration set by section 6–106, and the potential for the accrual of windfall vote to Democratic party candidates in Oklahoma General Elections are hotly contested issues in this case.

Predictably then, at the hearing on May 8, 1996, the focus of a majority of the parties' evidence was on the question whether there is position bias in Oklahoma General Elections caused by the ballot configuration dictated by section 6–106 of the Election Code. Both Plaintiffs and Defendants proffered expert testimony evidence bearing upon this question.

Plaintiffs' expert, Dr. Taebel, testified that position bias is a well documented and generally accepted phenomenon in those elections, such as common primary elections, where candidates are not distinguishable from one another due to an absence of party designation on the ballot form, or to anonymity.[21] The more information voters possess to permit them to identify a candidate (such as party affiliation, race or sex of a candidate, and notoriety), the less likely it is that voters will be influenced by the position of the candidate's name on the ballot.[22]

In highly publicized, partisan elections, voters customarily possess a large amount of information about the candidates for which they are voting. In such elections, position bias is apparently minimal.[23] However, Dr.

Taebel testified that in his opinion, and in the opinion of other noted political science experts, some amount of position bias and resultant windfall vote occur whenever candidates are listed vertically on an election ballot, even in highly publicized, partisan elections.[24] Thus where, as in Oklahoma's General Election, the election ballot form presents vertical lists of candidates to voters, position bias and resultant windfall vote may affect those political races for public office where the outcome of the election rests on the voting decision of a small number of voters.[25]

In his testimony at the hearing, Defendants' political science expert, Robert Darcy, Ph.D., ("Dr. Darcy") disagreed with Dr. Taebel's opinions. While Dr. Darcy admitted that position bias occurs in primary elections where candidates' names are listed vertically on the ballot, Dr. Darcy testified there is no position bias which results from such an election ballot configuration in partisan elections, like Oklahoma's General Elections.[26] Dr. Darcy stated that, after researching the question, he concluded position bias is certainly not a factor which affects the outcome of any political races for public office in those partisan elections that receive a large amount of public attention.[27]

This Court, however, discounts Dr. Darcy's testimony for two reasons. First, Dr. Darcy's opinions and conclusions regarding the absence of position bias in Oklahoma's General Elections are based upon a study conducted by Dr. Darcy utilizing the party-column ballots employed by Oklahoma prior to the enactment of the new version of section 6–106 of the Election Code.[28] Dr. Darcy's opinions are therefore derived from experiments which utilized an entirely different ballot format than the format presently set by section 6–106 of the Election Code. Con-

---

20. Affidavit of Delbert E. Taebel, Exhibit "3" to Plaintiff's Motion, at ¶ 6.

21. Transcript at pp. 28, 30, 31–2, 60–1.

22. *Id.* at p. 91.

23. *Id.* at pp. 46–9.

24. *Id.* at pp. 25, 40, 42–3, 46–7, 71, 75, 81, 97.

25. *Id.* at pp. 71, 75, 97.

26. Transcript at p. 112.

27. *Id.* at pp. 126, 139, 190.

28. Transcript at pp. 112–117, 163. Plaintiffs' expert, Dr. Taebel testified that, in his opinion, position bias is not a factor in party-column ballots where candidates are listed horizontally. Transcript at p. 41. The opposing party experts thus agree position bias would not be expected to be a factor in general elections in which a party-column ballot format is utilized.

sequently, Dr. Darcy's opinions are not particularly relevant to the question in this case whether position bias results from Oklahoma's use of the office block ballot now dictated by section 6–106. Furthermore, Dr. Darcy's published conclusion that position bias is absent in partisan elections has been much criticized by other political science experts around the country.[29]

Based upon these facts, the Court concludes the greater weight of the evidence suggests that while its effect may be slight, position bias is present in partisan elections where candidates for office are listed vertically on the election ballot within office blocks.[30] The Court therefore finds that Plaintiffs have met their burden to prove some measure of position bias exists in Oklahoma's General Elections, and that Democratic party candidates for public office receive a number of windfall votes in such Elections because of the configuration of election ballots prescribed by section 6–106 of the Election Code.

The facts of this case raise three (3) legal issues which must be determined before this Court may render judgment: (1) whether Plaintiffs have standing to bring this action under Article III of the United States Constitution, since the 1994 General Election was long-ago concluded; (2) whether the Court has jurisdiction to determine the constitutionality of section 6–106 of the Election Code under the Constitution of the State of Oklahoma; and (3) whether section 6–106 is constitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Court begins its opinion on these matters by addressing the question of Plaintiffs' standing under Article III. U.S. Const. art. III, § 2, cl. 1.

## II. *OPINION*

### A. *Plaintiffs' Standing under Article III of the United States Constitution.*

 The doctrine of standing is an essential element of the "case or controversy"

requirement of a federal court's jurisdiction as described by Article III of the United States Constitution. U.S. Const. art. III, § 2, cl. 1. *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656, 662–63, 113 S.Ct. 2297, 2301–02, 124 L.Ed.2d 586, 595 (1993); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351, 364 (1992). In order to show standing, a plaintiff bringing a case in a federal court must demonstrate: first, that the plaintiff has sustained injury "in fact;" second, that there is a causal connection between the plaintiff's asserted injury and the conduct of the defendant about which the plaintiff complains; and finally, that the plaintiff's injury is likely to be redressed by a favorable decision of the court. *Florida General Contractors,* 508 U.S. at 662–65, 113 S.Ct. at 2301–02, 124 L.Ed.2d at 595–96.

 The final element of Article III standing, the "redressible injury" element, mandates that a federal court's jurisdiction is limited to those legal controversies which are "on-going" or, stated another way, which are *not* for some reason "moot." *Honig v. Doe,* 484 U.S. 305, 318–19, 108 S.Ct. 592, 601–02, 98 L.Ed.2d 686, 703–04 (1988). A controversy will be held to be "moot" where the issues presented by the parties are no longer "live" issues, or where the plaintiff in the case no longer claims any interest in the lawsuit's outcome. *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353, 357 (1982).

 Here, Plaintiffs' case raises an Article III standing issue because the 1994 General Election is over, and no action by this Court can redress any injury sustained by Plaintiffs as a result of any compliance by these Defendants with the provisions of section 6–106 of the Election Code. However, because most of the Plaintiffs have filed affidavits with this

---

**29.** *Id.* at pp. 137–8, 172, 173–4, 177.

**30.** Although the phenomenon of position bias may be disputed by Defendants in this case, it is obvious that the Democratically-controlled Oklahoma Legislature intended to take advantage of

any position bias that might exist when the Legislature enacted section 6–106 of the Election Code and dictated the name of the Democratic party candidate would always be listed on top of other candidates on the ballot.

Court expressing their intentions to run again for election to public office in Oklahoma's next appropriate General Election, the Court holds Plaintiffs' case is governed by the "capable of repetition, yet evading review" exception to the mootness doctrine found in Article III jurisprudence. *See Hunt,* 455 U.S. at 482, 102 S.Ct. at 1183–84, 71 L.Ed.2d at 357.

■ The "capable of repetition, yet evading review" exception to the mootness doctrine provides that where, as here, a challenged conduct of a defendant is too short in duration to be fully litigated prior to the conduct's cessation, and where there exists a reasonable expectation that the same plaintiff will again be subject to the defendant's challenged conduct in the future, a federal court may hold the Article III requirement of "redressibility" has been met in the plaintiff's case. *Hunt,* 455 U.S. at 482, 102 S.Ct. at 1183–84, 71 L.Ed.2d at 357. In Plaintiffs' circumstance here, the Court holds both prongs of the "capable of repetition, yet evading review" exception are easily satisfied.

The 1994 General Election was on-going for only a few months—not long enough for Plaintiffs to seek and be granted any proper final relief on their claims. Accordingly, the first prong of the "capable of repetition, yet evading review" exception is fulfilled in Plaintiffs' case.

As to the question whether it is likely Defendants' same conduct will harm Plaintiffs in future elections, the Court finds Plaintiffs' affidavits stating their intentions to run again for election sufficient to demonstrate there is a reasonable probability Plaintiffs will again be subject to the same conduct by Defendants (as mandated by section 6–106 of the Election Code) as was challenged by Plaintiffs during the pendency of the 1994 General Election. Thus, the second prong of the "capable of repetition, yet evading review" exception is met in this instance. Having found Plaintiffs' circumstance meets both elements of the "capable of repetition, yet evading review" exception to the mootness doctrine, the Court holds Plaintiffs have demonstrated proper Article III standing,

and the Court has subject matter jurisdiction over Plaintiffs' federal claims.

**B. *The Court's Jurisdiction over Plaintiff's State Law Claim.***

■ The issue of the propriety of this Court's exercise of jurisdiction over Plaintiffs' state law claim was not raised by the parties in their pleadings before this Court. However, because the issue is one of this Court's subject matter jurisdiction, the Court holds it is proper that the issue be raised *sua sponte* in this opinion. *See e.g., Johns v. Stewart,* 57 F.3d 1544, 1552 (10th Cir.1995); *Mascheroni v. Board of Regents of University of California,* 28 F.3d 1554, 1559 (10th Cir.1994).

■ Generally speaking, the Eleventh Amendment to the United States Constitution grants states immunity from suit in federal court. U.S. Const. amend. XI; *Lujan v. Regents of University of California,* 69 F.3d 1511, 1522 (10th Cir.1995). The United States Court of Appeals for the Tenth Circuit recently reiterated that the Eleventh Amendment nevertheless does *not* bar a plaintiff from bringing a section 1983 action against a state in federal court, where the injury asserted by the plaintiff is the continued violation of the plaintiff's constitutional rights by a state official, and the relief sought by the plaintiff is prospective injunctive relief. However, the Eleventh Amendment *does* bar a plaintiff from bringing an action against a state official in federal court where the relief sought is prospective injunctive relief, and where the injury complained of by the plaintiff is the *violation of the state's statutory or constitutional law.* *Johns,* 57 F.3d at 1553 (citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 910, 79 L.Ed.2d 67 (1984)). *See also, Seminole Tribe of Florida v. Florida,* —— U.S. ——, —— – ——, ——, 116 S.Ct. 1114, 1122–23, 1124, 134 L.Ed.2d 252, 265, 267 (1996); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). This is because the Eleventh Amendment prohibits a federal court from instructing a state official how to conform his or her conduct with the requirements of a state's law. *Johns,* 57 F.3d at 1553. Fed.R.Civ.P. 12(b)(1).

Under *Johns*, this Court is prohibited by the Eleventh Amendment from exercising jurisdiction over Plaintiff's state law claim because the claim requires the Court to order Defendants to conform their conduct with the mandates of Oklahoma's Constitution. Therefore, the Court must dismiss Plaintiff's claim under Article III, § 5 of the Constitution of the State of Oklahoma.

### C. The Constitutionality of 26 Okla. Stat. 6–106 under the Fourteenth Amendment.

In addressing the primary issue raised by Plaintiffs in this case: *i.e.*, the constitutionality of section 6–106 of Oklahoma's Election Code, the Court is guided by two (2) principles which the United States Supreme Court consistently expresses as axiom in its election law opinions. First, the proper functioning of our country's democratic system is inherently dependent upon the ability of citizens to exercise their fundamental rights of free speech and association by affording them the opportunity to cast their vote for a candidate for public office in an unfettered, thoughtful, and educated manner. *See e.g., Rutan v. Republican Party of Illinois,* 497 U.S. 62, 75–76, 110 S.Ct. 2729, 2737–38, 111 L.Ed.2d 52, 67 (1990); *Bullock v. Carter,* 405 U.S. 134, 141, 92 S.Ct. 849, 854–55, 31 L.Ed.2d 92, 99 (1972). In this regard, this Court notes that an election ballot is the "[s]tate devised form" through which candidates and voters are permitted to express their viewpoints and associational preferences in the political forum. *Rosen v. Brown,* 970 F.2d 169, 175 (6th Cir.1992) (quoting, *Bachrach v. Secretary of Commonwealth,* 382 Mass. 268, 415 N.E.2d 832, 834 (1981)). Thus, the manner and means a state decides to utilize to allow citizens to cast their vote on an election form directly implicates the citizens' rights of free speech and association under the First Amendment.

Second, the Election Clause of the United States Constitution grants states the power to create those laws and regulations necessary to assure that the integrity and reliability of the election process is protected. This power reaches its limit, however, when it unnecessarily or inordinately encroaches upon a voter's ability to cast a meaningful vote at the election polls. *See e.g.,* U.S. Const. art. I, § 4, cl. 1; U.S. Const amend. I, XIV, § 1, cl. 2; *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986); *Bullock,* 405 U.S. at 141, 92 S.Ct. at 854–55, 31 L.Ed.2d at 98. A state's election law which unduly burdens a citizen's right to vote directly infringes upon the citizen's First Amendment rights and, upon review by a federal court, must be held unconstitutional under the First and Fourteenth Amendments.

Because any state's attempt to promulgate laws regulating the time, manner and place of elections must, by its nature, impact citizens' fundamental right to cast a meaningful vote in some respect, the Supreme Court has spent a substantial amount of time in its opinions throughout the years developing an analytical framework for federal courts to utilize when, as in the instant case, they are called upon to examine and determine the constitutionality of a state's election laws. *See Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *McDonald v. Board of Election Commissioners of Chicago,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The Supreme Court's most recent statement of this analytical framework is found in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and while the Supreme Court's analysis in *Anderson* was grounded upon the Due Process Clause,[31] rather than the Equal Protection Clause of the Fourteenth Amendment, it is this case which nevertheless provides the framework for the Court's determination of the issue presented by Plaintiffs here.

In *Anderson,* the Supreme Court notes that where a state's election law's classification of candidates or voters is challenged on constitutional grounds, a federal court should apply the "fundamental rights"

---

**31.** *See Anderson,* 460 U.S. at 786 n. 7, 103 S.Ct. at 1568 n. 7, 75 L.Ed.2d at 556 n. 7.

strand of a common equal protection analysis, identify what First and Fourteenth Amendment rights are implicated by the state's classification, and then consider the degree to which the state's classification furthers legitimate articulated state interests. *Anderson*, 460 U.S. at 786 n. 7, 103 S.Ct. at 1568 n. 7, 75 L.Ed.2d at 556 n. 7 (citing *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (other citations omitted)). This Court shall take this approach in the instant case but, in accordance with *Anderson*, the Court shall go one step further and consider the extent to which Defendants' articulated legitimate interests make it necessary to burden the Plaintiffs' constitutional rights. *See Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570, 75 L.Ed.2d at 558; *Burdick*, 504 U.S. at 433–34, 112 S.Ct. at 2063, 119 L.Ed.2d at 253. In this way, the Court shall seek to assess whether the particular legitimate interests Defendants assert they are attempting to protect under section 6–106 of Oklahoma's Election Code are best served by the classification Defendants use to achieve this purpose. The Court is satisfied such an assessment is required by. *Anderson*, and by later Supreme Court opinions. *See Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570, 75 L.Ed.2d at 558. *See also*, *Burdick*, 504 U.S. at 433–34, 112 S.Ct. at 2063, 119 L.Ed.2d at 253; *Tashjian*, 479 U.S. at 214, 107 S.Ct. at 548–49, 93 L.Ed.2d at 523.

1. *The First and Fourteenth Amendment rights which are implicated by the classification established by 26 Okla. Stat. § 6–106.*

Under *Anderson*, the first step which the Court must take in conducting its analysis is to identify the First and Fourteenth Amendment rights which may be implicated by the classification of candidates dictated by the Oklahoma Election Code provision at issue in this case. In order to undertake such an identification, the Court must first examine precisely how the particular classification prescribed by section 6–106 of the Election Code, and any position bias which results from the classification, might implicate a voter's legal rights.

Section 6–106 of Oklahoma's Election Code effectively selects Democratic party candidates for public office for the top position in a vertical list of candidates appearing in an office block on any General Election ballot. The Court has found that the ballot format which results from the mandates of section 6–106 causes position bias to occur, and a certain amount of "windfall vote" to accrue to Democratic party candidates for public office.

It is unrefuted in the Court's record that, by definition, any accrual of "windfall vote" to Democratic party candidates arising from the phenomenon of position bias results *not* from any thoughtful or meaningful choice by voters, but from some sort of "random" or "irrational" selection process which, especially in the less notorious General Election races for public office, occurs because of voter fatigue, apathy or confusion.[32] This accrual of randomly or irrationally selected windfall votes causes a dilution of the number of votes which are meaningfully and thoughtfully cast by more careful or interested voters at the election polls.

Thus, the existence of position bias arising from ballot configuration in an election infringes upon the careful and thoughtful voters' rights of free speech and association by negating the weight or impact of those citizens' votes for candidates for public office.[33] In this way, although the impact may be slight, citizens' rights under the First and Fourteenth Amendments are directly infringed. The Court finds that this infringement is likely to result from the particular ballot configuration mandated by section 6–106 of the Election Code in Oklahoma's General Elections. The Court therefore holds that

---

**32.** *See Transcript* at pp. 27–32, 40, 47, 56–7, 59–60, 71, 75, 97, 104.

**33.** Other federal district courts have noted the potential for dilution of the thoughtfully and meaningfully cast vote by the existence of position bias resulting from ballot configuration. *See* e.g., *Devine v. State of Rhode Island*, 827 F.Supp. 852, 860–62 (D.R.I.1993); *Culliton v. Board of Election Commissioners*, 419 F.Supp. 126, 128–29 (N.D.Ill.1976), *aff'd, Sangmeister v. Woodard*, 565 F.2d 460 (7th Cir.), *appeal dismissed, cert. denied*, 435 U.S. 939, 98 S.Ct. 1516, 55 L.Ed.2d 535 (1978).

the particular First and Fourteenth Amendment interest which is burdened as a result of the implementation of section 6–106 of the Election Code by Defendants is the right of Oklahoma's citizens to cast a meaningful and fully weighted vote in Oklahoma's General Election.

### 2. The degree to which the classification established by 26 Okla.Stat. § 6–106 furthers Oklahoma's articulated, legitimate interests.

The second step in the Court's equal protection analysis under *Anderson* is for the Court to determine what interests the State of Oklahoma intends to serve by implementing the classification prescribed by section 6–106 of the Election Code, and then to examine the extent to which the classification actually fulfills these interests. It is this step in the Court's analysis which the Court finds to be especially troubling for Defendants' legal position in this case.

An examination of the language of section 6–106 reveals there are two (2) choices which were made by the State of Oklahoma (through the Oklahoma Legislature) when it enacted the statutory provision at issue here. First, the State decided to utilize a uniform ballot system employing an office block format in its General Elections, rather than a rotating ballot system with some other format. *Compare* 26 Okla.Stat. § 6–106, *with* 26 Okla Stat. § 6–109. Second, the State decided to select Democratic party candidates for the top position in every list of candidates for public office in each office block on all General Election ballots. 26 Okla.Stat. § 6–106. In making this selection, the State also made the choice to discriminate against other candidates for public office with respect to the ballot position issue.

In their arguments before this Court on May 8, 1996, and in the briefs supporting their Motion for Summary Judgment, Defendants articulated many interests which the State wished to serve in making its first choice demonstrated by section 6–106: Defendants produced evidence to the Court that a uniform, office block ballot system is more cost efficient, less administratively burdensome, and less likely to cause voter confusion than a rotating ballot system. Moreover, the uniform office block ballot system permits the efficient counting of straight party votes in Oklahoma's General Elections. In this Court's opinion, the many interests Oklahoma seeks to serve by maintaining a uniform ballot system in Oklahoma's General Elections are both legitimate and important, and the office block ballot format mandated by section 6–106 effectively serves the State's interests. *See Tashjian*, 479 U.S. at 217–19, 107 S.Ct. at 550–51, 93 L.Ed.2d at 525–26 (cost savings in conducting elections is sufficient basis for enacting legislation regulating time, place and manner of election); *American Party of Texas v. White*, 415 U.S. 767, 782, 94 S.Ct. 1296, 1306–07, 39 L.Ed.2d 744, 761 (1974) (preservation of integrity of election process and avoidance of voter confusion are important state interests).

However, the same cannot be said of the second choice made by the State in enacting section 6–106 of the Election Code: *i.e.*, the choice to select Democratic party candidates for top position in the office blocks on every General Election ballot. As to this choice, the Court holds no legitimate State interest has been articulated, or can possibly be served by the selection of one particular party's candidates for priority position on every General Election ballot.

At the May 8, 1996, hearing in this matter, there was evidence demonstrating only one (1) articulated reason for the Democratically-controlled Oklahoma Legislature's choice to select Democratic party candidates for top billing on General Election ballots. The Legislature desired to assure that, in the event a benefit was to be obtained by ballot position, the name of the Democratic party candidate for public office was placed in a position on the ballot where the candidate could enjoy such benefit.[34] The interest the State was seeking to serve when making the choice to classify Democratic party candidates for top position on General Election ballots was, therefore, entirely political.[35]

---

**34.** Transcript at pp. 210–11.

**35.** *Id.*

■ Political patronage is not a legitimate state interest which may be served by a state's decision to classify or discriminate in the manner in which election ballots are configured as to the position of candidates on the ballot. *See Rutan v. Republican Party of Illinois,* 497 U.S. 62, 69–70, 110 S.Ct. 2729, 2734–35, 111 L.Ed.2d 52, 63 (1990) (political patronage can be a very effective impediment to the associational freedoms which are essential to a meaningful system of democracy). Based upon the unrefuted evidence that the State's motivation for classifying Democratic party candidates in a manner which affords them top position on General Election ballots in the instant case was based upon the State's desire to promote, in any manner available, the Democratic party candidates running for political office, the Court must hold the articulated interest which Oklahoma desired to serve in enacting section 6–106 of the Election Code is not a "legitimate" state interest within the meaning of *Anderson.* Since Defendants have failed to articulate any other interest which might be served by the choice of ballot position dictated by section 6–106, the Court must hold there is no legitimate reason for the classification which results from Defendants' implementation of the mandates of 26 Okla.Stat. § 6–106.

3. ***The extent to which the State is justified in making the classification prescribed by 26 Okla.Stat. § 6–106 based upon the State's articulated interests, and the burden upon Plaintiff's constitutional rights.***

Considering the analysis described above, it is clear that, to the extent the State of Oklahoma wishes to save money, protect the efficiency of the electorial process, avoid voter confusion, and permit straight party voting, any small burden upon citizens' constitutional rights which occurs as a result of the State's choice to utilize a uniform office block ballot system in Oklahoma's General Elections is outweighed by the importance of the State's interest in achieving these purposes. Therefore, the small amount of position bias which might be present in any particular

General Election as a result of the fact the State has chosen to utilize an uniform office block ballot in such Elections does not render the State's classification under section 6–106 of the Election Code an undue burden on the Oklahoma citizens' First and Fourteenth Amendment rights. The State's choice to use a uniform office block ballot does not, therefore, violate the Equal Protection Clause.

■ Accordingly, to the extent the State desires to maintain a uniform office block ballot system, and to retain the capability for straight party voting in General Elections, the Court holds section 6–106 is constitutional, and Defendants may continue to implement the provisions of section 6–106 to the extent they call for such a system to be used. The Court therefore declines to grant Plaintiffs' request that the Court issue an affirmative injunction requiring the State to implement a rotating ballot system in its General Elections.

■ However, because the Court has held the interest which the State desires to serve by classifying Democratic party candidates in a manner in which they are always given the top position in every office block on every General Election ballot is not a legitimate state interest, the Court must hold there is no burden upon Oklahoma citizens' First and Fourteenth Amendment rights which would be justified by such classification. Indeed, the classification mandated by section 6–106 of Oklahoma's Election Code cannot survive even this Court's lowest level of scrutiny, the rational basis test,[36] because the State has failed to articulate any legitimate interest to be served by its classification. *See e.g., Quinn v. Millsap,* 491 U.S. 95, 105–07, 109 S.Ct. 2324, 2330–32, 2332 n. 10, 105 L.Ed.2d 74, 88, 89 n. 10 (1989) (where state's classification does not survive the rational basis test, it is unconstitutional, and no further scrutiny is required).

Thus, to the extent section 6–106 prescribes a top position for Democratic candidates in every office block on every General

---

**36.** The rational basis test in equal protection jurisprudence requires that a state's classification be rationally related to a legitimate governmental purpose in order to survive constitutional scrutiny.

Election ballot, the Court holds section 6–106 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Court shall therefore permanently enjoin Defendants, and their official successors, from effectuating that portion of section 6–106 which the Court holds violates the the Equal Protection Clause. The Court shall leave it to Defendants, and to the State of Oklahoma to fashion a scheme for choosing the order of candidates on General Election ballots which will not unconstitutionally discriminate, and will better serve the legitimate interests of the State, and its citizenry, than the scheme currently mandated by Oklahoma law.

## III. *CONCLUSION*

The Court declares that provision of 26 Okla.Stat. § 6–106 which mandates that the name of the Democratic party candidate for office always be printed in the top position in office blocks on General Election ballots to be in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Defendants, and their official successors, are permanently enjoined from giving any effect to that portion of 26

37. Pleadings number 24 and 25, filed by the

Okla.Stat. § 6–106 which the Court holds to be unconstitutional in this case.

Plaintiffs' and Defendants' Motions for Summary Judgment are **DENIED AS MOOT.**[37] **Plaintiffs' claim under Article III, § 5 of the Constitution of the State of Oklahoma is dismissed pursuant to Fed. R.Civ.P. 12(b)(1).**

**ON OR BEFORE FIFTEEN (15) DAYS FROM THE DATE OF THIS ORDER, PLAINTIFFS SHALL FILE A WRITTEN BRIEF WITH THIS COURT ADDRESSING THE ISSUES OF BOTH THE PROPRIETY AND THE AMOUNT OF ATTORNEYS' FEES AND COSTS WHICH MIGHT BE AWARDED TO PLAINTIFFS IN THIS CASE. DEFENDANTS SHALL FILE A RESPONSE TO PLAINTIFF'S BRIEF WITHIN FIFTEEN (15) DAYS OF THE SERVICE OF PLAINTIFFS' BRIEF UPON DEFENDANTS.**

**JUDGMENT SHALL BE GIVEN TO PLAINTIFFS IN THIS CASE, AS SET FORTH IN THIS MEMORANDUM OPINION AND ORDER, UPON RESOLUTION OF THE ISSUES RAISED BY PLAINTIFFS WITH RESPECT TO THEIR REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND COSTS.**

parties on March 15, 1996.

# EXHIBIT "A"
## OFFICIAL ABSENTEE BALLOT
## GENERAL ELECTION
## NOVEMBER 8, 1994
## CARTER COUNTY, OKLAHOMA

TO VOTE: COMPLETE THE ARROW(S) ◀━ ▪◀ POINTING TO YOUR CHOICE(S), LIKE THIS: ◀━━◀

USE A #2 PENCIL (NO INK)

| STATE OFFICERS | CONGRESSIONAL OFFICERS | LEGISLATIVE, DISTRICT & COUNTY OFFICERS |
|---|---|---|

**STATE OFFICERS**

STRAIGHT PARTY VOTING
(Vote for One)
DEMOCRAT ◀━ ▪◀
REPUBLICAN ◀━ ▪◀

FOR GOVERNOR
(Vote for One)
JACK MILDREN, Democrat ◀━ ▪◀
FRANK KEATING, Republican ◀━ ▪◀
WES WATKINS, Independent ◀━ ▪◀

FOR LIEUTENANT GOVERNOR
(Vote for One)
NANCE DIAMOND, Democrat ◀━ ▪◀
MARY FALLIN, Republican ◀━ ▪◀
BRUCE D. HARTNETT, Independent ◀━ ▪◀

FOR STATE AUDITOR
AND INSPECTOR
(Vote for One)
CLIFTON H. SCOTT, Democrat ◀━ ▪◀
JERRY GERALD PAUL DELANEY, Republican ◀━ ▪◀

FOR ATTORNEY GENERAL
(Vote for One)
DREW EDMONDSON, Democrat ◀━ ▪◀
MIKE HUNTER, Republican ◀━ ▪◀

FOR STATE TREASURER
(Vote for One)
ROBERT BUTKIN, Democrat ◀━ ▪◀
BOB KEASLER, Republican ◀━ ▪◀

FOR SUPERINTENDENT OF
PUBLIC INSTRUCTION
(Vote for One)
SANDY GARRETT, Democrat ◀━ ▪◀
LINDA MURPHY, Republican ◀━ ▪◀

FOR COMMISSIONER OF LABOR
(Vote for One)
DAVE RENFRO, Democrat ◀━ ▪◀
BRENDA RENEAU, Republican ◀━ ▪◀

FOR STATE INSURANCE
COMMISSIONER
(Vote for One)
CARROLL FISHER, Democrat ◀━ ▪◀
JOHN P. CRAWFORD, Republican ◀━ ▪◀

FOR CORPORATION
COMMISSIONER
(Vote for One)
CHARLES NESBITT, Democrat ◀━ ▪◀
BOB ANTHONY, Republican ◀━ ▪◀

**CONGRESSIONAL OFFICERS**

STRAIGHT PARTY VOTING
(Vote for One)
DEMOCRAT ◀━ ▪◀
REPUBLICAN ◀━ ▪◀

FOR U.S. SENATOR
(Unexpired Term)
(Vote for One)
DAVE McCURDY, Democrat ◀━ ▪◀
JAMES M. INHOFE, Republican ◀━ ▪◀
DANNY CORN, Independent ◀━ ▪◀

FOR U S REPRESENTATIVE
DISTRICT NO. 3
(Vote for One)
BILL K. BREWSTER, Democrat ◀━ ▪◀
DARREL DEWAYNE TALLANT, Republican ◀━ ▪◀

**LEGISLATIVE, DISTRICT & COUNTY OFFICERS**

STRAIGHT PARTY VOTING
(Vote for One)
DEMOCRAT ◀━ ▪◀
REPUBLICAN ◀━ ▪◀

FOR STATE REPRESENTATIVE
DISTRICT NO. 48
(Vote for One)
AL SADLER, Democrat ◀━ ▪◀
DON RAY THOMASON, Republican ◀━ ▪◀

**VOTE BOTH SIDES**

1584

## OFFICIAL STATE OFFICERS BALLOT
### GENERAL ELECTION, NOVEMBER 6, 1990

**ATTENTION VOTER:**
Detach this stub in the presence of the Precinct
Inspector before depositing ballot in the ballot box.

## OFFICIAL STATE OFFICERS BALLOT
### GENERAL ELECTION, NOVEMBER 6, 1990

| DEMOCRATIC | REPUBLICAN | INDEPENDENT |
|---|---|---|
| ◯ | ◯ | |
| STATE OFFICERS | STATE OFFICERS | STATE OFFICERS |
| FOR GOVERNOR | FOR GOVERNOR | FOR GOVERNOR |
| ☐ DAVID WALTERS | ☐ BILL PRICE | ☐ THOMAS D. LEDGERWOOD II |
| FOR LIEUTENANT GOVERNOR | FOR LIEUTENANT GOVERNOR | |
| ☐ JACK MILDREN | ☐ TERRY NEESE | |
| FOR STATE TREASURER | FOR STATE TREASURER | |
| ☐ ELLIS EDWARDS | ☐ CLAUDETTE HENRY | |
| FOR SUPERINTENDENT OF PUBLIC INSTRUCTION | FOR SUPERINTENDENT OF PUBLIC INSTRUCTION | |
| ☐ SANDY GARRETT | ☐ GERALD E. HOELTZEL | |
| FOR COMMISSIONER OF LABOR | FOR COMMISSIONER OF LABOR | |
| ☐ DAVE RENFRO | ☐ IRA PHILLIPS | |
| FOR CORPORATION COMMISSIONER | FOR CORPORATION COMMISSIONER | FOR CORPORATION COMMISSIONER |
| ☐ JAMES B. TOWNSEND | ☐ J.C. WATTS | ☐ |

