**LIBERTARIAN PARTY OF COLORADO, Richard Combs, and W. Earl Allen, Plaintiffs,**

v.

**Victoria BUCKLEY, in her official capacity as Secretary of State of the State of Colorado, Defendant.**

**Civil Action No. 96–WM–1983.**

United States District Court, D. Colorado.

Sept. 6, 1996.

---

William Edmond Zimsky, Dugan & Abadie, Durango, CO, for plaintiffs.

Elizabeth Weishaupl, Assistant Attorney General, Denver, CO, for defendant.

## ORDER ON MOTION
## FOR PRELIMINARY
## INJUNCTION

KANE, Senior District Judge.

Plaintiffs are the Libertarian Party of Colorado and two party members who have qualified to be placed on the November 1996 ballot for election to the United States House of Representatives. The date for the general election is November 5, 1996. The ballot is to be certified on September 16, 1996.

Plaintiffs filed their Complaint in this action on August 23, 1996, challenging the constitutionality of Colorado Revised Statutes § 1–5–404(1) (1996 Supp.).[1] Section 1–5–404 provides for a two-tier arrangement of names on ballots for partisan elections. Ballot positions for candidates from the two "major political parties" are determined by lot and arranged accordingly in the first group; and ballot positions for candidates from all other political parties or organizations are determined by lot and arranged accordingly in the second group.

A "political organization," as it is defined in the statute, is any group of registered electors who, by petition for nomination of an unaffiliated candidate, places nominees for public office on the ballot. Colo.Rev.Stat. § 1–1–104(24). A "political party" is any political organization whose candidate at the last preceding gubernatorial election received at least ten percent of the total gubernatorial votes cast. Id., § 1–1–104(25). A "major political party" is one of the two political parties whose candidate for governor at the last preceding gubernatorial election received the first and second greatest number of votes. Id., § 1–1–104(22).

Plaintiff Libertarian Party was not one of the two political parties whose candidate for governor received the first or second greatest number of votes in the last election. Accordingly, it is precluded by operation of § 1–5–404(1) from participating in the lottery for the first or second position in the ballot's first tier. Plaintiffs Combs and Allen are therefore slated to participate in the lottery for positions in the second tier of the ballot.

Plaintiffs claim § 1–5–404 discriminates against all candidates for public office other than those nominated by the Republican or Democratic Parties with respect to ballot position and thus violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. They seek a declaratory judgment that § 1–5–404(1) is unconstitutional as well as preliminary and permanent injunctive relief. The injunctions sought would prohibit the Secretary of State from enforcing § 1–5–404(1) and require her to assign ballot positions to candidates without reference to party or success in the preceding election.

Before me now is Plaintiffs' Motion for Preliminary Injunction. The printing date for the November election ballots is September 16, 1996. Plaintiffs seek a preliminary injunction requiring the Secretary of State either to direct that all lots for ballot positions be redrawn so that all candidates who have qualified for the ballot are given an equal chance to be drawn for every position, or to list candidates in alphabetical order. Unless ballot positions are redrawn before the September 16 printing date, Plaintiffs

---

1. **1–5–404. Arrangement of names on ballots for partisan elections.** (1) In all partisan elections, the names of all candidates and joint candidates who have been duly nominated for office shall be arranged on the ballot under the designation of the office in two groups. The names of the candidates of the two major political parties shall be placed on the general election ballot in an order established by lot and shall comprise the first group.... [and] [t]he names of the candidates and joint candidates of the remaining political parties or political organizations shall be listed in an order established by lot and shall comprise the second group.

\* \* \* \* \* \*

argue they will be denied the opportunity for any meaningful relief before the election.

## I. *PRELIMINARY INJUNCTION.*

### A. *Standard.*

■ To obtain a preliminary injunction, the movant must establish:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980).

■ The purpose of a preliminary injunction under Rule 65, Federal Rules of Civil Procedure, is to preserve the status quo between the parties pending final determination on the merits of an action. *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). A preliminary injunction alters the rights of the parties, affording the movant a form of relief before he has proven his case. Because it "is an extraordinary remedy," a preliminary injunction will not issue unless the right to relief is "clear and unequivocal." *SCFCILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991).

■ Certain types of preliminary injunctions are so disfavored that the movant must satisfy an even heavier burden before they may be issued. *SCFC* at 1098–99. These include preliminary injunctions that (1) disturb the status quo; (2) that are mandatory rather than prohibitory; or (3) that afford the movant "substantially all the relief he may recover at the conclusion of a full trial on the merits." *Id.* The preliminary injunc-

tion sought by Plaintiffs in the instant action falls into each of these three categories.

■ In order to prevail on a motion for preliminary injunction where the requested injunction falls into one or more of the disfavored categories, the movant must show that, "on balance," the four *Lundgrin* factors "weigh heavily and compellingly" in his favor. *SCFC* at 1099. "The burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits." *GTE Corp. v. Williams,* 731 F.2d 676, 679 (10th Cir.1984).[2]

Plaintiffs have not met their burden here.

### B. *Preliminary Relief Inappropriate.*

■ Plaintiffs seek a preliminary injunction requiring the Secretary of State to:

A) cause or direct that all lots for ballot positions for all partisan elective offices for the 1996 general election in which there are at least one qualified candidate who is not a nominee of either the Republican or Democratic Party be redrawn whereby all candidates who have qualified for the ballot are given an equal chance to be drawn for every position in their respective office block; and

B) arrange the ballot listing for all joint candidates for the office of president and vice-president in alphabetical order, regardless of party affiliation.

Plaintiffs argue that without such relief before September 16, any opportunity to appear in the first or second ballot positions will be lost even if they ultimately succeed on the merits.

Plaintiffs acknowledge they are seeking a mandatory preliminary injunction that disturbs, rather than preserves, the status quo. Mot. Preliminary Inj. at 6. Further, the preliminary injunction sought is substantively identical to—and in some respects more

---

**2.** Plaintiffs assert the higher standard was applied in *SCFC* only because the preliminary injunction sought in that case required "ongoing supervision." Mot.Preliminary Inj. at 6 (citing *SCFC* at 1099). Because the preliminary injunction sought here would not require such supervi-

sion, Plaintiffs contend the higher standard should not apply. Plaintiffs' argument mischaracterizes the rationale in *SCFC* and is rejected. Plaintiffs clearly must meet the heightened standard articulated in *SCFC* to obtain the mandatory preliminary injunction they seek.

arduous than[3]—the permanent injunction Plaintiffs request in their Complaint on the merits. Plaintiffs have cited no case, and I have found none, where preliminary relief was granted under these circumstances.

The preliminary injunction sought would afford the Libertarians all of the relief they could recover were they to prevail on the merits of their claim, before the merits have been adjudicated. This turns the remedy of preliminary relief on its head. I am also concerned that Plaintiffs filed this action only two months before the election and little more than two weeks before the September 16 ballot certification date. The challenged statute was enacted in 1992 and became effective on January 1, 1993. The statutory scheme itself has been in effect since 1931. *See* Colo.Stat.Ann.C. 59 § 198 (1935). As Plaintiffs themselves assert, "[c]andidates of the Libertarian Party have qualified for the ballot in past elections," yet they fail to explain why they waited until the certification date was imminent before filing their Complaint. The timing makes full consideration of the constitutional issues raised in time to effect meaningful relief difficult, if not impossible, and creates the very harm for which Plaintiffs seek preliminary relief. Our system of laws is ill-served by the timing of the filings in this case.

## II. *MERITS.*

### A. *Likelihood of Success on the Merits.*

The Tenth Circuit prescribes the balancing test set forth in *Anderson v. Celebrezze,* 460

U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983) to analyze challenges to a state's election laws. *Blomquist v. Thomson,* 739 F.2d 525, 527 (10th Cir.1984). The test provides that

> '[a court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.'

*Blomquist* at 527 (quoting *Anderson* at 789, 103 S.Ct. at 1570).[4] "Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570.

### 1. *Constitutional Injury.*

■ Applying the *Anderson* balancing test, I consider first the character and magnitude of Plaintiffs asserted constitutional injury. *Blomquist,* 739 F.2d at 528. Plaintiffs contend § 1–5–404(1) burdens voters' rights to cast their votes in a meaningful way, implicating their First Amendment rights to free-

---

**3.** For example, the permanent injunction Plaintiffs seek would prohibit Defendant from "discriminat[ing] against any candidate who qualifies for the ballot of any partisan general election or congressional vacancy with respect to ballot position." By contrast, the preliminary injunction would prescribe the specific means by which the nondiscrimination policy would be implemented, i.e., by redrawing lots for ballot positions or by arranging the ballot listings in alphabetical order. The Western District of Oklahoma in *Graves et al. v. McElderry,* No. CIV–94–1420–R, 1996 WL 640434 (discussed in Section II, *infra* ) specifically declined to prescribe the means the state should employ to eradicate discrimination in the ballot even after entering judgment in favor of the Libertarian Party on the merits of their constitutional claim. Slip op. (attached as Ex. 4 to Pls.' Mot. Preliminary Inj.) at 26 (leaving it to defendants and the State of Oklahoma to fashion scheme for choosing the order of candi-

dates on ballots that would not unconstitutionally discriminate and would better serve the legitimate interests of the State and its citizens).

**4.** In *Blomquist,* the Tenth Circuit invalidated a Wyoming election statute providing that the majority of the 8,000 signers required for a new political party to obtain ballot access may not reside in the same county. 739 F.2d at 529. Finding that the "two-county rule" directly burdened substantial voting and associational rights, the court went on to examine the interests offered in justification by the State. It rejected the State's interests in requiring new parties to demonstrate "a modicum of support" and in keeping the ballot a "reasonable size," finding they were belied by the State's specific agreement in that case to allow plaintiffs to qualify as a new political party after obtaining only 1,333 signatures. *Id.*

dom of speech and freedom of association. Mot. Preliminary Inj. at 10–11. They also contend the statute is discriminatory because it denies them "an equal opportunity to win votes," thus violating their equal protection rights under the Fourteenth Amendment. *Id.*

Plaintiffs rely heavily on a recent decision of the Western District of Oklahoma declaring unconstitutional, in part, a section of Oklahoma's Election Code providing that the Democratic party candidate always appear in the top ballot position. *See Graves v. McElderry,* No. CIV–94–1420–R, 1996 WL 640434 (W.D.Okla. July 3, 1996) (slip opinion attached as Ex. 4 to Pls.' Mot. Preliminary Inj.).[5]

In *Graves,* the Libertarian Party's expert witness Delbert E. Taebel, Ph.D., testified that a certain amount of "windfall vote" or "position bias" accrues to that candidate whose name appears on an election ballot in a higher position. *See* slip op. at 8–10. The district court relied on Dr. Taebel's testimony, concluding that "while its effect may be slight" in partisan elections,[6] some amount of "position bias" in fact accrues to the candidate whose name appears higher on the ballot. Slip op. at 11–12. Because such bias "dilut[es] the number of votes [that] are meaningfully and thoughtfully cast," the court found the Oklahoma Election Code provision infringed upon those voters' rights under the First and Fourteenth Amendments. *Id.* at 17, 19–21 (citing *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 73–74, 110

S.Ct. 2729, 2736–37, 111 L.Ed.2d 52 (1990) and *Bullock v. Carter,* 405 U.S. 134, 141, 92 S.Ct. 849, 854–55, 31 L.Ed.2d 92 (1972)).[7]

Dr. Taebel testified both in person and by affidavit in this case as well. Plaintiffs rely on Dr. Taebel's testimony and the court's findings in *Graves* to argue that § 1–5–404(1) allows "position bias" to "dilute[ ] the weight of careful and thoughtful voters' rights of free speech and association" in violation of those voters' rights under the First and Fourteenth Amendments. (Pls.' Mot. Preliminary Inj. at 11–12, 19 & Ex. B (Taebel Affid.)). As an initial matter, the analogy to *Graves* is less apt than Plaintiffs suggest. Further, Dr. Taebel stopped short in his testimony of reaching the conclusion Plaintiffs sought.

Unlike the ballot position statute at issue in *Graves,* Colorado's statute is facially neutral. It does not classify candidates eligible for the first-tier ballot positions by party affiliation, nor does it relegate "all candidates for public office other than those nominated by the Republican or Democratic Parties" to a second-tier position as Plaintiffs suggest. If, over time, the Libertarian Party develops sufficient voter support to receive the first or second greatest number of votes in a gubernatorial election, its candidates will qualify for the top ballot position.[8] There simply is no constitutionally cognizable classification scheme being employed by the State of Colorado in the application of § 1–5–404.[9]

---

**5.** The plaintiffs in the *Graves* action were also members of the Libertarian Party.

**6.** The court noted that Dr. Taebel had also testified that in highly publicized, partisan elections where voters customarily possess a large amount of information about the candidates, position bias is " 'minimal.' " *Graves,* slip op. at 10.

**7.** The court in *Graves* went on to find that Oklahoma's failure to articulate "any legitimate interest" to be served by the ballot position statute mandated its invalidation under the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 25.

**8.** It is significant that Plaintiffs do not assert in this case that "position bias" somehow prevents them from becoming a "major political party" under Colorado's statutory scheme, nor is there support in the record for such an assertion.

**9.** That is not to say that an electoral scheme that places the top two finishers in the previous gubernatorial election in the first two positions on the next ballot does not favor the dominant parties in this state, i.e. the Democratic and Republican parties. The Libertarians are not the only group that has expressed dissatisfaction with structures and processes they believe unfairly benefit and perpetuate the two-party system in this country. Whether these processes are unfair or subdue alternative voices is a topic for the political branches of government. It is not, necessarily, one for the courts. Indeed, the ability of a legislative body comprised entirely of Republicans and Democrats to enact a facially neutral statute unlike the one in *Graves* gives us pause to wonder. As was said of the talking dog in vaudeville, "One doesn't criticize its pronunciation, the wonder is it talks at all."

Further, Dr. Taebel's testimony at most supports a finding that § 1–5–404(1) may have a slight, and probably *de minimis*, effect on Colorado voters' constitutional rights. Dr. Taebel acknowledged that Colorado's ballot format states candidates' party affiliations and testified that party identification militates against the effect of position bias. While Dr. Taebel hedged somewhat by adding that party identification "is diminishing as a factor in selecting candidates," Taebel Affid. at ¶ 12, and "will not negate position bias, especially among independent voters and voters who only weakly identify with a political party," *id.* at ¶ 11, he stopped short in his testimony of reaching any conclusion regarding position bias in the coming partisan general election in Colorado. In his own words, position bias in such an election is "minimal." *See* n. 6, *supra*.

Assuming, for the sake of argument, that § 1–5–404 is amenable to an equal protection analysis and infringes even slightly on voters' constitutional rights, I continue with the *Anderson* directive to weigh the "character and magnitude" of this infringement against the legitimacy and strength of the State's proffered justifications for it. *Anderson* 460 U.S. at 789, 103 S.Ct. at 1570.

### 2. *The Balance of Interests.*

The Secretary asserts the two-tier ballot position scheme adopted by the legislature furthers the State's legitimate interests in maintaining an orderly ballot and assuring the integrity and reliability of the election process. According to the Secretary, the scheme furthers these interests by ensuring that position assignment is fair, i.e., that no one political party will always have top ballot position, *c.f. Graves* ("Democratic Party first" scheme invalid), and that no incumbent will always have top ballot position. *C.f. McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir.1980) (based on conclusive finding of statistical advantage to top ballot position, "incumbent first" statute invalid).

■ Before weighing the parties' respective interests, I revisit briefly the issue of the proper standard of review. Plaintiffs assert,

somewhat half-heartedly, that the State's reasons for enacting the two-tier ballot position scheme at issue in this case should be reviewed under a strict scrutiny analysis given the "fundamental" voting rights at issue.[10] I disagree.

As the Supreme Court acknowledged in *Anderson*, the states have "important regulatory interests" in protecting the integrity and reliability of the electoral process. *Anderson* 460 U.S. at 788 & n. 9, 103 S.Ct. at 1569–70 & n. 9; *see Baer v. Meyer*, 728 F.2d 471, 474 (10th Cir.1984) (acknowledging necessity of "substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process"). Accordingly, the Court opted for a flexible balancing approach to constitutional challenges to specific election laws, rather than any rigid " 'litmus-paper test.' " *Anderson* at 788–89, 103 S.Ct. at 1569–70 (ultimately finding the interests of voters who chose to associate together to support an independent candidate outweighed Ohio's "minimal interest" in imposing a March deadline for candidate to file nominating petition and statement of candidacy).

Going on to balance the parties' respective interests, I reiterate my finding that any constitutional injury resulting from Colorado's two-tier scheme, if it exists at all, is minimal. Section 1–5–404 is facially neutral and neither excludes minority parties from the ballot nor prevents them from attaining "major political party" status. While the State offered little in the way of evidence to support its justifications for enacting its ballot position plan, its recognized interest in regulating elections is sufficient to outweigh any "position bias" claimed by Plaintiffs.

I note that a similar "two-tier" scheme was approved by the Seventh Circuit in *Board of Election Comm'rs v. Libertarian Party of Illinois*, 591 F.2d 22, 25 (7th Cir.), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979). In that case, the Seventh Circuit held that "[d]ifferent treatment of minority

---

10. In their statement of the case, Plaintiffs assert § 1–5–404 is unconstitutional because it discriminates against minority parties "without any rational basis [for doing so]," Mot. Preliminary Inj. at 2, suggesting that a lower standard of review applies.

parties that does not exclude them from the ballot, prevent them from attaining major party status if they achieve widespread support, or prevent any voter from voting for the candidate of his choice, and that is reasonably determined to be necessary to further an important state interest does not result in a denial of equal protection." I agree and conclude that Plaintiffs have failed to demonstrate the requisite likelihood of success on the merits of their claim under the *SCFC* standard.

### B.   *The Balance of Harms.*

Because Plaintiffs have failed to demonstrate a sufficient likelihood of success on the merits of their constitutional challenge, I do not consider the remaining three prongs of the *SCFC* standard for obtaining a preliminary injunction.

### III.   *CONCLUSION.*

For the foregoing reasons, Plaintiffs' request for preliminary injunction is DENIED.