**LIBERTARIAN PARTY OF COLORADO, Richard Combs, and W. Earl Allen, Plaintiffs,**

**v.**

**Victoria BUCKLEY, in her official capacity as Secretary of State of the State of Colorado, Defendant.**

No. CIV. A. 96–K–1983.

United States District Court, D. Colorado.

June 25, 1998.

William E. Zimsky, Abadie & Zimsky, LLC, Durango, CO, for Plaintiffs.

Elizabeth A. Weishaupl, Assistant Attorney General, Denver, CO, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KANE, Senior District Judge.

This constitutional challenge to Colorado's ballot position statute, originally assigned to Judge Miller of this court, came before me for trial to the court on May 26, 1998. After hearing the evidence presented and considering the relevant legal authorities, I find the challenged statute neither offends the United States Constitution nor infringes on Plaintiffs' constitutional rights. Plaintiffs have failed to prevail on the merits of their claims and are not entitled to the permanent injunction they seek. Pursuant to Rule 52(a), Fed. R.Civ.P., the following constitute my findings of fact and conclusions of law.

### I. INTRODUCTION.

Section 1–5–404(1) of the Colorado Revised Statutes prescribes the method for determining ballot position for partisan elections conducted in the State of Colorado. At the time Plaintiffs Libertarian Party of Colorado, Richard Combs and W. Earl Allen filed this action in 1996, § 1–5–404(1) (the "Ballot Position Statute") provided for a two-tier ballot in which the candidates of the "two (2)

major political parties" would be placed in an order established by lot in the first tier and the candidates of the "remaining political parties or political organizations" would be listed in an order established by lot in the second tier. A "major political party" was defined by § 1–1–104(22) as "one of the two political parties whose candidate for governor at the last preceding gubernatorial election received the first and second greatest number of votes."

Because neither Combs nor Allen, nor any other candidate from the Libertarian Party, would qualify for the top ballot position, Plaintiffs claimed the Ballot Position Statute stigmatized and discriminated against them and all candidates generally who "are not members of the Republican or Democratic Parties" in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. (Complaint at ¶¶ 1–2, 22–24.) In addition, Plaintiffs claimed the Statute, because of the alleged phenomenon of "ballot position bias," burdened their fundamental rights to cast a "meaningful vote" for second-tier Libertarian candidates in violation of the First and Fourteenth Amendments of the Constitution. (Id. at ¶¶ 1–2, 32.) On these grounds, Plaintiffs moved for a preliminary injunction directing the State to redraw ballot positions for the then-upcoming 1996 election so that all candidates would be given an equal opportunity for the top position. Mot. Prelim. Inj. (dated Aug. 27, 1996) at p. 20. Because Judge Miller had not yet been sworn in at the time the suit was filed and assigned to him, I conducted the preliminary injunction hearing. Finding Plaintiffs had failed to demonstrate the requisite likelihood of success, I denied Plaintiffs' motion. *Libertarian Party of Colorado v. Buckley,* 938 F.Supp. 687 (D.Colo.1996).

In early 1998, before the trial on the merits was scheduled before Judge Miller, the

Colorado General Assembly passed House Bill 98–1110, 1998 Colo. Legis. Serv. Ch. 95 (WEST). The bill added a new Part 13 to article 4, title 1 creating "minority party" status and an additional ballot tier to accommodate it. Thus, the new Ballot Position Statute as amended by HB 98–1110 provides for a three-tiered scheme placing "candidates of the two major political parties" in the first tier, those of "minority political parties" in a second tier, and candidates of the "remaining political organizations" in a third tier. In addition, however, the bill redefined "major political parties" to do away with the two-party limit.

The State notified the court of the amendment on May 21, 1998, one week before trial, stating that under the new ballot position scheme Plaintiffs would qualify for "minority party" status and would be placed in the second tier of the ballot. (Def.'s Mot. Amend Findings of Fact & Conclusions of Law, at p. 2.) Because Plaintiffs would have been in the second tier of the ballot under either statutory scheme, new or old, the State concluded that it "believed Plaintiffs' position with regard to this litigation is substantively unchanged, and that the issue before the court, on alleged position bias remains unchanged." *Id.* When asked for their view on this at trial, Plaintiffs summarily agreed. Plaintiffs also denied a need for additional discovery and declined to alter or amend their claims in any way.[1]

If any useful lesson may be learned in this case, it is to consider carefully questions asked by the trial judge. The parties' "agreement" that HB 98–1110 had no effect on their claims and defenses in this case was unresponsive to the question presented and appeared less the result of any measured consideration than of a desire to avoid it. The law has changed, and, though obscured somewhat by what appears to be a drafting error,[2] significantly so. The top tier is no

---

1. The parties left unchanged their statements of claims and defenses (*see* Pretrial Order, ¶ 3(a) & (b)), as well as their Stipulation of Facts, (Pretrial Order, ¶ 4), both of which continued to frame the case in terms of the old Ballot Position Statute, including a definition of "major political party" as being limited to the "first or second greatest" vote-getters (¶ 4(k)), an assumption that all but the top two vote-getters are excluded from the top tier of the ballot. (¶ 4(m) & (n)), and an

assertion that the Statute is biased in favor of the Republican and Democratic parties (¶ 4(l)). These characterizations no longer reflect the law and are largely meaningless.

2. The bill retained the language from the original Statute reserving the top tier of the ballot for "candidates of the two major political parties," but had already altered the definition of "major political party" in new § 1–1–104(22) to do away

longer reserved for "the two" highest vote-getters. Under the new definition of "major political party," as many as 10 political parties may qualify for the top tier. The parties have failed entirely to address the new law or to explain or substantiate, by reference to existing law or fact, why they believe it has "no effect" on the issues before me.

The conclusory assertion that the constitutional analysis is unaltered because Plaintiffs will not qualify for the top tier in the 1998 election under either statutory scheme is insufficient to create a justiciable controversy. The change goes to the heart of Plaintiffs' constitutional challenge, which no longer applies to the Statute as it now exists.

■ In sum, I am being asked to rule on the constitutionality of a statute (which through amendment has been altered in relevant part and, in my view, rendered indecipherable as written) based on facts and arguments developed around its predecessor. Accommodating this request would be the height of judicial irresponsibility—resulting in a federal court issuing an advisory opinion on the constitutionality of a state's no-longer existing ballot positioning scheme. Doubtless the endeavor would meet with strong objection from both sides in any other context.

The case presented is nonjusticiable. Nevertheless, out of an abundance of caution and to ensure a full record in the event of an appeal, I offer the following observations on the merits of Plaintiffs' claims based on my consideration of the witness testimony and other evidence received at trial. First, however, I pause to address the Defendant's Motion for Summary Judgment challenging Plaintiffs' standing to sue, which was filed

months before trial but which remained pending at the time the case was reassigned to me.[3]

## II. STANDING.

The State asserts each of the Plaintiffs lacks standing to pursue their constitutional challenge because none has suffered an actual injury as a result of the Ballot Position Statute. (Def.'s Mot. Summ. J. at pp. 2, 3.) Even if they had standing, the State argues Plaintiffs cannot, as a matter of law, establish the injury was to a constitutionally legally protected right. (Id. at p. 3.) Because the State's second contention turns on the ultimate question in this case—namely, whether ballot position or "ballot position bias" infringes on any cognizable constitutional right of the Libertarian Party, its candidates or the individual plaintiffs Combs and Allen—I consider it in my discussion on the merits. My observations here are limited to the State's first argument.

The basis for the assertion that Plaintiffs can demonstrate no actual injury is the parties' stipulation, at paragraph 4(o) of the Pretrial Order, that Plaintiffs "will not present any evidence [at trial] for the purpose of demonstrating that the specific impact of [the Ballot Position Statute] on the Libertarian Party and/or its candidates is different or distinct from the impact this statute has on independent candidates or other political organizations and/or their candidates which similarly do not qualify for one of the top two ballot positions." From this, the State inferred that Plaintiffs Allen and Combs "will present no evidence demonstrating the specific effect of the [S]tatute . . . on themselves [or] . . . . [t]he party." (Mot. Summ. J. at pp.

---

with the two-party limit. Old § 1–1–104(22) defined "major political party" as "one of the two political parties whose candidate for governor at the last preceding gubernatorial election received the first and second greatest number of votes." New § 1–1–104(22) defines "major political party" as "any political party . . . whose candidate at the last preceding gubernatorial election received at least ten percent of the total gubernatorial votes cast." Thus, there can now be as many as ten "major political parties," and yet the top tier remains reserved for "the two" of them. The nonsequitor results in an obvious conundrum: If three parties receive 10+ % of the vote in an election, then which of the three will be

"the two" that qualify for the top ballot position in the next election? The irrationality of the question suggests the continued reference to "the two major political parties" in new § 1–5–404(1) (and (2)) is a drafting error, and that the top tier of the ballot is now available to as many parties as received 10% or more of the total gubernatorial votes in the previous election.

3. Because trial was less than a week away, I informed the parties that I would hear argument on the Motion for Summary Judgment on the day of trial and take the matter under advisement. In the meantime, trial on the merits would go forward as scheduled.

3, 4, ¶¶ 4,7.) The inference does not follow from the premise and is unpersuasive.

 It is undisputed that at the time this action was filed, both Combs and Allen had qualified to be placed on the ballot as Libertarian Party congressional candidates for the election scheduled for November 5, 1996. (Pretrial Order, at p. 3, ¶¶ a, b.) It is also undisputed that they were excluded by operation of the Ballot Position Statute from being placed in the top tier of the ballot and that they failed to win the election. Whether these facts are sufficient to establish the unconstitutionality of the Statute will be discussed below. They are, however, sufficient to confer standing on the individual Plaintiffs.[4] Because the Libertarian Party is suing in its representative capacity on behalf of all candidates who have been excluded from the top tier of the ballot in the past and who will be excluded in the future, the party, too, has standing to sue.

## III. MERITS.

### A. Plaintiffs' Equal Protection Claim.

 Plaintiffs claim the Ballot Position Statute precludes qualified candidates who are not members of the Republican and Democratic parties from ever enjoying top ballot position in Colorado. As set forth above, the April amendments to Colorado's Ballot Position Statute undermine the entire premise of Plaintiffs' equal protection challenge. If the alleged discrimination in favor of the Republican and Democratic parties was tenuous under the old Statute, see Libertarian Party, 938 F.Supp. at 692 (finding no constitutionally cognizable classification for the purposes of the Equal Protection Clause where Statute facially neutral such that Libertarian Party could, "over time ... develop sufficient voter support to ... qualify for top ballot position"), it is all but illusory now. Not only is there no longer a numeric limit of two for qualification as a "major political party" and eligibility for the top ballot position, but the Libertarian Party need only obtain 10% of the vote to so qualify. Given the number of unaffiliated voters in Colorado,[5] any assertion that 10% of the vote is unattainable reveals self-doubt uncharacteristic of any political party, let alone one whose candidates have already qualified for the ballot in previous elections. In short, Plaintiffs' equal protection analysis, contingent upon the establishment of some form of unconstitutional "classification," fails as a matter of law.

### B. Plaintiffs' First Amendment Claims.

Alternatively, individual Plaintiffs Allen and Combs claim the Statute infringes on their First Amendment rights as voters to cast a meaningful vote for Libertarian Party candidates. The challenge hinges on the existence of "ballot position bias," which Plaintiffs define as a "phenomenon by which the first candidate listed on a ballot receives windfall votes [simply because of his ballot position]." (Pls.' Proposed Findings of Fact & Conclusions of Law, ¶ 15.) Because the first candidate on the ballot receives these windfall votes and can "never" be a Libertarian candidate,[6] Plaintiffs contend their own votes for Libertarian candidates are "diluted" and their first amendment voting rights unlawfully burdened.

The State challenges Plaintiffs' first amendment theory as a matter of law, but I find no need to consider the constitutional issues raised. The evidence presented failed utterly to persuade me that the "phenomenon of ballot position bias" exists in the first

---

4. The fact that neither Allen nor Combs has qualified for the 1998 ballot or has announced an intention to run does not render their case moot. See Meyer v. Grant, 486 U.S. 414, 417 n. 2, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988)(although 1984 election in which appellees first hoped to present initiative to citizens of Colorado had passed, controversy was capable of repetition yet evading review and was not moot).

5. I note that Plaintiffs, at trial, presented evidence showing registered party affiliation in Colorado as of April 2, 1998, was 876,042 Republican; 834,735 Unaffiliated; and 757,698 Democrat. (Pls.' Ex. 7.)

6. Again, this is a premise not necessarily true under the old Ballot Position Statute (which would have allowed the Libertarian Party to vie for top ballot position if it developed sufficient support over time to come in first or second in a gubernatorial election) and even less so under the amended statute where 10% of the vote in a given election would qualify a Libertarian Party candidate for the top tier.

instance, and I reject Plaintiffs' first amendment claim on that basis alone.

Plaintiffs did little more at trial to establish the existence of ballot position bias than to resubmit the 1996 deposition of, and preliminary injunction exhibits related to, Dr. Delbert A. Taebel, professor of Urban Affairs and Political Science at the University of Texas School of Urban and Political Affairs. Dr. Taebel did not testify at trial and Plaintiffs neither updated nor supplemented his earlier testimony or conclusions. I discussed Dr. Taebel's testimony and written work on the subject of "ballot position bias" in my 1996 Order denying Plaintiffs' Motion for Preliminary Injunction. *See Libertarian Party v. Buckley,* 938 F.Supp. at 692–93. Plaintiffs presented nothing at trial to temper my initial conclusion that, even if I found Dr. Taebel's testimony persuasive, the impact of "position bias" in the type of elections at issue in Colorado is "minimal." *Id.* at 693. Further, Dr. Taebel's testimony that position bias increases as a candidate's name recognition decreases (Pls.' Ex. No. 2 (Taebel Article); Dep. Tr. at 22–23) actually supports, rather than undermines, the reasonability of a Statute that assigns a candidate's position on the ballot according to the demonstrated support for that candidate's party in the previous election.

As it stands, however, I find Dr. Taebel's testimony unpersuasive and cannot, on the basis of that testimony, conclude the phenomenon of "ballot position bias" exists, or exists in a magnitude sufficient to constitute an unjustifiable infringement on Plaintiffs' voting rights. Assuming, for the sake of argument, that the Ballot Position Statute infringes " 'even slightly' " on voting rights, I reiterate my conclusion reached after the preliminary injunction hearing in this case that the " 'character and magnitude' " of any such infringement is outweighed by the State's interest in regulating and organizing their elections. *Libertarian Party,* 938 F.Supp. at 693–94 (applying standard articulated in *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)).

## IV. *CONCLUSION.*

For the foregoing reasons, I find the controversy between the parties nonjusticiable. Alternatively, I reject Plaintiffs' contention that Colorado's Ballot Position Statute, codified as amended at Colo.Rev.Stat. § 1–5–104(1), unconstitutionally stigmatizes and discriminates against the Libertarian Party or its past and future candidates for office, or that it unconstitutionally infringes upon the voting rights of Plaintiffs Allen or Combs. Judgment shall enter against Plaintiffs and in favor of the Defendant Buckley, and the action dismissed.